**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>[54] JORGE MATIAS-ROSADO,<br><br>**Defendant.** | **CRIMINAL NO. 16-591 (RAM)** |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Probation Officer's *Motion informing Violations of Supervised Release* (Docket No. 3789), the United States' *Simultaneous Post-Hearing Brief* (Docket No. 3848), and Defendant Jorge Matias-Rosado's ("Defendant" or Mr. Matias-Rosado") *Supplemental Brief in Opposition to Revocation* (Docket No. 3850).

Having considered the evidence at final revocation hearing held on August 19, 2026, and the parties' post-hearing briefs, the Court finds by a preponderance of the evidence that Defendant violated the conditions of his supervised release term.

## I. BACKGROUND

Defendant plead guilty to Count I of the indictment which charged a violation of 21 U.S.C. 841(a)(1), 846, and 860 (conspiracy to possess with intent to distribute controlled substances). (Docket No. 2593). On March 7, 2023, Mr. Matias-

Rosado was sentenced to 60 months of imprisonment followed by supervised release term of eight (8) years. (Docket No. 2827). As disclosed in the Amended Judgment, the first mandatory condition of supervised release is that Mr. Matias-Rosado "must not commit another federal, state or local crime." Id. at 3. Mr. Matias-Rosado began his supervised release term on April 30, 2026, and it is set to expire on April 29, 2034. (Docket No. 3789 at 1).

On June 26, 2026, less than two months after Mr. Matias-Rosado began his supervised release term, United States Probation Officer Israel Sanchez ("USPO Sanchez") filed a *Motion informing Violations of Supervised Release*. Id. USPO Sanchez's motion reported the following.

First, on June 21, 2026, Mr. Matias-Rosado informed the Probation Officer that he had been summoned, interviewed, and arrested by the Puerto Rico Police in relation to an alleged domestic violence incident. Id. at 1.

Second, "[a] police complaint (2026-01-462-02339) was filed against Mr. Matias-Rosado for violating Article 3.1 of Puerto Rico's Domestic Violence Law (Law 54)", the Court of First Instance found probable cause for Mr. Matias-Rosado's arrest, and he was detained due to his failure to post-bail. Id. at 1-2.

Lastly, USPO Sanchez contacted Puerto Rico Police Department Officer José Santanta-Torres ("Officer Santana-Torres") who investigated the complaint. Id. at 2. According to Officer Santana-

Torres, "on June 21, 2026, Mr. Matias-Rosado insulted Ms. Viloriо-Rodriguez using foul language and struck her in the face area." Id.

On July 17, 2026, USPO Sanchez filed a supplemental motion where he reported that at a preliminary hearing held on July 3, 2026, no cause was found for the two state charges pending against Mr. Matias-Rosado. (Docket No. 3801). Thus, Mr. Matias-Rosado was released from state prison. Id. at 1. Nevertheless, based on the information he had collected, USPO Sanchez stated that Mr. Matias-Rosado had not followed the supervised release conditions imposed by the Court and measures to mitigate potential risks and ensure accountability were necessary. Id. USPO Sánchez requested that Mr. Matias-Rosado be summoned and show cause why supervised release term should not be revoked. Id. at 2.

Mr. Matias-Rosado waived the preliminary revocation hearing, and a final revocation hearing was held on August 19, 2026. (Docket Nos. 3808 and 3825). During the final revocation hearing, the Government presented the testimony of USPO Israel Sanchez, Puerto Rico Police Department Officer José Santana-Torres, and the alleged victim Ms. Clariza Viloriо-Rodriguez (Ms. Viloriо-Rodriguez). (Docket No. 3825).

The Court ordered the parties to file simultaneous post-hearing briefs by September 2, 2026. Id. The parties complied with the order. (Docket Nos. 3848 and 3850).

## II. FINDINGS OF FACT

To make the following findings of fact, the Court considered the testimony of the witnesses and documentary evidence presented at the hearing.

1. According to Ms. Vilorio-Rodriguez's June 23, 2026, affidavit to the Puerto Rico Department of Justice, on June 21, 2026:

a. Ms. Vilorio-Rodriguez was living at an apartment in the Alejandrino Public Housing Project with her child.

b. The child's father is Mr. Matias-Rosado.

c. At around 5:00 a.m., Mr. Matias-Rosado began calling Ms. Vilorio-Rodriguez on the phone asking for his son. She hung-up on him.

d. Mr. Matias-Rosado showed up at Ms. Vilorio-Rosado's door, kicked it down, and entered the apartment.

e. He asked where Ms. Vilorio-Rodriguez had left their son.

f. When Ms. Vilorio-Rosado responded that their son was with her sister, Mr. Matias-Rosado attacked her, pulled her by the hair, threw her into the living room couch, hit her and called her a whore.

g. She got up from the couch, told him to leave, and stood in the doorway. On his way out, Mr. Matias-Rosado punched her on the right side of the face and she fell to the floor.

h. Ms. Vilorio-Rodriguez told Mr. Matias-Rosado she would call the police. In response, he grabbed the phone and took it with him.

*See* Government's Exhibit 1.

2. The phone was subsequently found damaged and photographed by the police. *See* Government's Exhibit 2 at 1-9.

3. At around 10-11:00 a.m., Ms. Vilorio-Rodriguez went to the Puerto Rico Police's Caimito Precinct where she was interviewed by Officer Santana-Torres.

4. According to Officer Santana-Torres, Ms. Vilorio-Rodriguez described the attack where Mr. Matias-Rosado kicked her door in, asked about their son, grabbed her, hit her, and left with her cellphone.

5. Also, according to Officer Santana-Torres, Ms. Vilorio-Rodriguez had light swelling in the face, a scratch on her neck, and appeared emotionally distressed.

6. The photographs admitted into evidence show that Ms. Vilorio-Rodriguez had scratches on the right side of her face and her neck, as well as a hematoma in her neck and chin area. *See* Government's Exhibit 2 at 11-25.

7. Officer Santana-Torres a was present when Ms. Vilorio-Rodriguez was interviewed by a state prosecutor. According to Officer Santana-Torres, she gave the state prosecutor the same account as before.

8. Officer Santana-Torres was not present when Ms. Vilorio-Rodriguez gave the sworn statement.

9. According to Officer Santana-Torres, the state charges filed against Mr. Matias-Rosado for the incident involving Ms.

Viloria-Rodriguez were dismissed for lack of interest by the victim.

10. On direct examination by the Prosecutor at the revocation hearing, Ms. Vilorio-Rodriguez denied the occurrence or having recollection of operative facts she had previously attested to in her affidavit to the Puerto Rico Department of Justice, despite having been shown said affidavit.

11. Ms. Vilorio-Rosado denied that Mr. Matias-Rosado kicked her door and broke her phone. When confronted with photographs of her injuries, she denied a scratch depicted therein was caused by Mr. Matias-Rosado.

12. Ms. Vilorio Rosado also denied recalling that she went to the police and the hospital to seek treatment.

13. Mr. Vilorio-Rodriguez blamed her lack of recollection of having been drinking and not being in her senses on the date of events.

14. While testifying during direct examination, Ms. Vilorio-Rosado kept fidgeting and swiveling in her seat. She also stared at the floor and would not make eye contact with the prosecutor while recanting or discrediting the testimony in her affidavit.

15. On cross-examination by Mr. Matias-Rosado's attorney, Ms. Vilorio-Rodriguez claimed ignorance of why she has a restraining order against Mr. Matias-Rosado. She also denied being afraid of Mr. Matias-Rosado.

## III. ANALYSIS

The Court does not find Ms. Vilorio-Rodriguez's testimony during the revocation hearing to be credible. As shown above, on direct examination by the Prosecutor, and despite having been shown her affidavit to the Puerto Rico Department of Justice, Ms. Vilorio-Rodriguez denied the occurrence, or having any recollection, of operative facts she had previously attested under oath.

Instead, the Court gives more weight to Ms. Vilorio-Rosado's statements to Officer Santana-Torres and the affidavit, which are contemporaneous or closer to the events triggering these revocation proceedings. While the Federal Rules of Evidence do not apply to revocation proceedings, it bears noting that "generally speaking, under the Federal Rules of Evidence, courts tend to find contemporaneous statements to be reliable because declarants are unlikely to have time to develop the intent to fabricate those statements." Soares de Souza v. Nessinger, No. 26-CV-221-JJM-PAS, 2026 WL 1593406 at *7 (D.R.I. June 4, 2026).

Moreover, Ms. Vilorio-Rosado's affidavit is corroborated by Officer Santana-Torres's testimony and the photographs admitted into evidence which depict scratches in Ms. Vilorio-Rodriguez's face and a hematoma on her neck. Lastly, her oft-repeated claim that she was "not in her senses" on the day of the event is belied by the fact that she gave her sworn statement to the state

prosecutor on June 23, 2026, that is, two days after the incident. While the Court does not believe Ms. Viloria-Rodriguez's testimony, it does not fault her. Domestic or acquaintance violence victims often "recant or refuse to cooperate." *See* O'Laughlin v. O'Brien, 577 F.3d 1, 4 (1st Cir. 2009) (Lynch, Dissenting) (*citing* T. Linger, Prosecuting Batterers After Crawford, 91 Va. L.Rev. 747, 768 (2005) ("Recent evidence suggests that 80 to 85 percent of battered women will recant at some point.").

Mr. Matias-Rosado was charged with a violation of Article 3.1 of Puerto Rico's Domestic Violence law, Law No. 54 of August 15, 1989, as amended, which provides:

> Any person who employs physical force or psychological abuse, intimidation, or persecution against his/her spouse, former spouse, or the person with whom he/she cohabits or has cohabited, or the person with whom he/she shares a child in common, regardless of the sex, civil status, sexual orientation, gender identity, or the immigrant status of the persons involved in the relationship, in order to cause physical harm to the person, the property held in esteem by him/her, except that which is privately owned by the offender, or to another person, or to cause serious emotional harm, shall be guilty of a fourth-degree felony in the upper end of the range.

P.R. Laws Ann. Tit 8, § 631. Based on the plain text of the statute, a violation of Article 3.1 has the following essential elements: (a) employment of physical force by the defendant; (b) against a spouse, former spouse, or person with whom the defendant shares a

child; and (c) in order to cause physical harm to the person or the person's property.

Turning to punishment, under the Puerto Rico Penal Code, fourth-degree felonies established by special penal laws that have no statutory punishment affixed thereto, such as Law 54, "[s]hall carry a punishment of imprisonment for a fixed term of three (3) years." P.R. Laws Ann. Tit. 33, § 5415. Thus, a violation of Article 3.1 is punishable by a term of imprisonment of three-years.

Based on the above findings, made under the preponderance of evidence standard mandated by 18 U.S.C. 3583(e)(3), the Court finds Mr. Matias-Rosado's conduct during the incident constitutes a violation of Article 3.1 of Law No. 54, P.R. Laws Ann. Tit. 8, § 631 because all the elements of the offense are present. First, Mr. Matias-Rosado employed physical force against Ms. Vilorio-Rodriguez when he pulled her by the hair, threw her into the living room couch, hit her, and punched her on the right side of the face. Second, Mr. Matias-Rosado shares a child with Ms. Vilorio-Rodriguez. Third, his attack caused her physical harm consisting of scratches, bruising, and facial swelling. By committing this state crime, Mr. Matias-Rosado violated mandatory condition of supervised release number 1.

Violations of Article 3.1 of Law 54 are punishable by a term of imprisonment exceeding one year. Thus, Mr. Matias-Rosado's

conduct constitutes a Grade B violation pursuant to U.S.S.G. 7C1.1(a)(2). Upon commission of a Grade B violation, revocation is mandatory pursuant to U.S.S.G. § 7B1.3(a)(1).

Turning to sentencing exposure, based on Mr. Matias-Rosado's Criminal History Category of I and a Grade B violation, the guideline imprisonment range in this case is from 4 to 10 months. However, because Mr. Matias-Rosado's original offense is a Class B felony, the maximum term of imprisonment is a term of three (3) years. *See* Docket No. 2714 at 1; 18 U.S.C. § 3583(e)(3).

## IV. CONCLUSION

Mr. Matias-Rosado violated the conditions of his supervised release term by committing a state offense punishable by a term of imprisonment exceeding one year thus meriting revocation.

A sentencing hearing is set for **December 3, 2026, at 9:30 a.m. in Courtroom 7.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 20th day of November 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE